**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DISH NETWORK L.L.C., <br><br>Plaintiff, <br><br>v. <br><br>YAHYA ALGHAFIR, TEXAS COMMUNICATION & TECHNOLOGY LLC, SHENZHEN JIEMAO TECHNOLOGY CO., LTD., and SHENZHEN STREET CAT TECHNOLOGY CO., LTD., individually and together d/b/a Super Arab IPTV, <br><br>Defendants. | Civil Action No. 4:20-cv-1678 |

## COMPLAINT

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendants Yahya Alghafir ("Alghafir"), Texas Communication & Technology LLC ("TCT"), Shenzhen Jiemao Technology Co., Ltd. ("Jiemao"), and Shenzhen Street Cat Technology Co., Ltd. ("Street Cat"), individually and together d/b/a Super Arab IPTV.

### Nature of the Action

1. DISH brings this suit for direct and contributory copyright infringement because Street Cat is taking broadcasts of television channels exclusively licensed to DISH and is unlawfully retransmitting these channels over the Internet throughout the United States on Defendants' Super Arab IPTV service (the "Super Arab Service") to customers who purchase Defendants' Super Arab IPTV set-top boxes and account renewals. Defendants know that the Super Arab Service is providing access to television channels exclusively licensed to DISH. Street Cat manufactures, distributes, and sells Super Arab IPTV set-top boxes and account renewals to Jiemao, with knowledge that Jiemao in turn distributes and sells them to Alghafir and TCT. Alghafir and TCT

is Jiemao and Street Cat's United States distributor.  Jiemao, Alghafir, and TCT are materially contributing to and inducing direct copyright infringement by Street Cat.

2. Defendants demonstrated the willfulness of their infringement by Street Cat continuing to transmit channels exclusively licensed to DISH and by all Defendants continuing to distribute and sell the Super Arab Service in the United States, despite multiple demands from DISH that they cease.

**Parties**

3. Plaintiff DISH Network L.L.C. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

4. Defendant Yahya Alghafir is an individual residing at 2953 Sandcastle Lane, Houston, Texas 77057.  Alghafir distributes, sells, and promotes the Super Arab Service through TCT and other aliases and business names including Yahya Luna, Mike Luna, Super IPTV, TCT LLC, Top Creative Trade, Texas Closeout Trade, and True Call.  Alghafir is the President, Director, founder, and owner of TCT.  Upon information and belief, Alghafir authorized, controlled, participated in, and received direct financial benefit from the infringing activities of TCT as alleged herein.  The acts Alghafir engaged in as an agent of TCT are believed to have been within the scope of such agency.

5. Defendant Texas Communication & Technology LLC was a Texas Limited Liability Company with its principal place of business located at 5868 Westheimer Road, Suite 328, Houston, Texas 77057.  On or about January 25, 2019, the status of TCT changed to "Forfeited Existence," meaning an inactive status indicating that the limited liability company failed to file its franchise tax return or to pay the tax due thereunder.

6. Defendant Shenzhen Jiemao Technology Co., Ltd. is a China limited liability company, registration number 91440300MA5DMEE486, with its principal place of business located at 1608 Beifang Plaza, Futian Subdistrict, Futian District, Shenzhen City, Guangdong Province, China.

7. Defendants Shenzhen Street Cat Technology Co., Ltd. is a China limited liability company, registration number 91440300MA5D97DM9M, with its principal place of business located at 1st Floor, Building 38, Xinmu Xinyuan Industrial Park, Pinghu Subdistrict, Longgang District, Shenzhen City, Guangdong Province, China.

## Jurisdiction and Venue

8. DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

9. Alghafir and TCT reside in and conduct business in the State of Texas, and therefore, are subject to this Court's personal jurisdiction.

10. Personal jurisdiction over Street Cat and Jiemao is proper in this Court because they purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business activities within the State of Texas by Street Cat transmitting channels exclusively licensed to DISH to users of the Super Arab Service in the State of Texas, and Street Cat and Jiemao supplying Alghafir and TCT with Super Arab IPTV set-top boxes and account renewals in the State of Texas, causing injury to DISH in this State and in this District.

11. In the alternative, personal jurisdiction is proper against Street Cat and Jiemao under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Street Cat and Jiemao sell Super Arab IPTV set-top boxes and account renewals to distributors and resellers in the United States and Street Cat transmits channels exclusively licensed to DISH to users of the Super Arab Service throughout the

United States ("Service Users") in violation of the Copyright Act. This Court's exercise of jurisdiction over Street Cat and Jiemao is consistent with the Constitution and laws of the United States, DISH's claims arise under federal law, and Street Cat and Jiemao are not subject to the jurisdiction of the courts of general jurisdiction of any state.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Alghafir and TCT reside in this judicial district, under § 1391(b)(2) because a substantial part of the events causing DISH's claims occurred in this district, under § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district, and under § 1391(c)(3) because Street Cat and Jiemao are nonresidents that may be sued in any judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## DISH's Copyrights

13. DISH is the fourth largest pay-television provider in the United States providing copyrighted programming to millions of subscribers nationwide. DISH is one of the largest providers of international television channels in the United States offering more than 400 channels in 27 different languages.

14. DISH contracts for and licenses rights for the international channels distributed on its platform from channel owners and their agents, including Al Jazeera Media Network; MBC FZ LLC; International Media Distribution (Luxembourg) S.A.R.L.; and World Span Media Consulting, Inc. (collectively, the "Networks").

15. The Networks' channels include Al Arabiya; Al Hayah 1; Al Jazeera Arabic News; Al Jazeera Mubasher; ART Cima; CBC; CBC Drama; Future TV; Hekayat; LBC; LBCI (a/k/a LDC); MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; and Melody Classic

4

(collectively, the "Protected Channels"). The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

16. DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and works that air on the Protected Channels in the United States by means including satellite, over-the-top ("OTT"), Internet protocol television ("IPTV"), and Internet. DISH's exclusive rights were in effect at all relevant times and are currently in effect. Many of the works that aired on the Protected Channels and for which DISH holds exclusive distribution and public performance rights are registered with the United States Copyright Office. (*See* Exhibit 1.) A vast number of additional, unregistered copyrighted works in which DISH holds exclusive distribution and public performance rights also aired on the Protected Channels. (*See* Exhibit 2.)

17. Defendants are not authorized by DISH to transmit, distribute, or publicly perform the Protected Channels or works that air on those channels in the United States, and DISH has received no compensation from Defendants to do so.

**Defendants' Wrongful Conduct**

18. Street Cat distributes, sells, and promotes the Super Arab Service to distributors and resellers including Jiemao, with knowledge that they are distributing, selling, and promoting the Super Arab Service to distributors and resellers in the United States, including Alghafir and TCT.

19. Jiemao, Alghafir, and TCT distribute, sell, and promote the Super Arab Service to Service Users through their websites which have included *www.superarabiptv.com* ("Superarabiptv.com"), *www.iptvarab.com* ("Iptvarab.com"), and *www.superarabiptv.net* ("Superarabiptv.net") (collectively, the "Super Arab Websites").

20. Alghafir and TCT were listed as the registrant of the Superarabiptv.com and Iptvarab.com domains using Alghafir's name and alias Yahya Luna, TCT's principal place of business, and email address yahya@truecall.com. True Call was also identified as the business name for the Iptvarab.com domain. Upon information and belief, Alghafir, TCT, and Jiemao continue to own and control the domains for the Super Arab Websites, but their identities are concealed by privacy protection services for domain registrations or false registration information.

21. DISH and the Networks sent numerous written notices of infringement to Alghafir and TCT. On August 29, 2017, Alghafir responded denying his infringement stating, "I do not sell any service for any of the channels you have listed." On August 30, 2017, Alghafir responded demanding that DISH and the Networks remove TCT and his email address from future notices of infringement.

22. On May 3, 2020, Alghafir and TCT responded to a notice of infringement claiming, "I was not aware until your cease and desist letter was brought to my attention that Super Arab IPTV box is violating your clients' copyright," and acknowledged their prior "selling, dealing and participating in [ ] activity related to the Super Arab IPTV boxes."

23. Alghafir, TCT, and Jiemao promoted the Super Arab Service on Superarabiptv.com, instructing consumers that the service has "All Arabic Channels," including "1500 Channels & Movies with 2 years complimentary service," "No Monthly Fees," the "Best after-sales service," is "Plug & Play," and there is "no need to install Dish." The Super Arab Service was promoted on Superarabiptv.com as follows:



24. Alghafir, TCT, and Jiemao promoted the Super Arab Service on Iptvarab.com, instructing consumers "[w]e offer the best channels [w]e strive to provide the best quality content [m]ore than 650 Arabic channels," and the Super Arab Service allows consumers to "[e]njoy a full range of Arabic TV programs while broadcasting with the latest news, popular programs, sports, and more." The Super Arab Service was promoted on Iptvarab.com as follows:



7

25. DISH and the Networks sent numerous written notices of infringement to Jiemao. Jiemao responded on May 11, 2017 stating, "[w]e are only rebranding and reselling the IPTV devices," "we disabled the website www.iptvarab.com," "we informed our customers in USA," and "[r]eseller in USA should run out of devices within 2-3 weeks from now, that should stop all sales activity for Super Arab IPTV in USA marketplace."

26. However, the Super Arab Service continued to be sold in the United States by Jiemao, Alghafir, and TCT.

27. Alghafir, TCT, and Jiemao similarly promoted the Super Arab Service on Superarabiptv.net, instructing consumers "[w]e offer the best channels [w]e strive to provide the best quality content [m]ore than 500 Arab channels," and the Super Arab Service allows consumers to "[e]njoy a full range of Arabic TV programs while broadcasting with the latest news, popular programs, sports, and more."

28. Alghafir and TCT also distributed, sold, and promoted the Super Arab Service through Amazon.com, Walmart.com, and other distributors and resellers throughout the United States.

29. Jiemao responded to a written notice of infringement on July 13, 2017 stating, "[w]e are only reselling the IPTV devices. [T]he contact information for the original selling company is: Shenzhen Street Cat CO; LTD. email: szstreetcat@foxmail.com."

30. DISH and the Networks sent numerous written notices of infringement to Street Cat. Street Cat repeatedly responded to the notices of infringement seeking a "business deal" with DISH and stating one "solution is that we could stop activating and assembling the Super Arab IPTV

8

boxes so all sales for the box will stop in USA marketplace."[1] Street Cat did not stop activating, assembling, or selling the Super Arab IPTV set-top boxes.

31. On May 22, 2018, Street Cat responded to a notice of infringement acknowledging that "[t]he documents [DISH's counsel] sent show that Dish has the right to distribute the channels in the USA," but Street Cat refused to cease its infringement because Street Cat claimed it "is not registered in the USA" and has "neither any server nor broadcasting equipment in the USA." Street Cat also opined that "I do not think that such quantity [of Super Arab IPTV set-top boxes sold in the United States] will effect a big company like Dish Network."

32. On May 2, 2020, Street Cat again responded to a notice of infringement acknowledging DISH's rights to distribute the channels in the United States, but claimed they "are not subject to the jurisdiction of US copyright law," and again sought a "business deal" with DISH.

33. Defendants use their Super Arab Service to transmit the Protected Channels over the Internet to Service Users soon after the original authorized transmission. Street Cat captures live broadcast signals of the Protected Channels, transcodes these signals into a format useful for streaming over the Internet, transfers the transcoded content to one or more servers provided, controlled, and maintained by Street Cat, and then transmits the Protected Channels to Service Users through OTT delivery.

34. Any member of the public with Internet access, including Service Users, can receive the Protected Channels from Defendants by simply purchasing a Super Arab IPTV set-top box, connecting the set-top box to a TV, powering on the device, and selecting the Protected Channels.

---

[1] Street Cat's responses were dated September 15, 2017; September 26, 2017; October 11, 2017; October 23, 2017; November 14, 2017; December 18, 2017; January 15, 2018; February 7, 2018; April 30, 2018; May 22, 2018; and May 2, 2020.

35. In January 2020, DISH's investigator purchased a Super Arab IPTV set-top box from Alghafir and TCT through Amazon.com for $299.00 that was described as "SUPER ARAB IPTV with More Than 1500 Channels and Movies, Including 2 Years Service and Additional Keyboard." DISH's investigator received the Super Arab IPTV set-top box with a return address of Top Creative Trade and TCT's principal place of business. This Super Arab IPTV set-top box was used to receive the Protected Channels. The Super Arab Service was promoted on Amazon.com as follows:



36. The Super Arab Websites also permitted consumers to add Super Arab IPTV set-top boxes and account renewals to a shopping cart, where Alghafir, TCT, and Jiemao sold the set-top boxes for $199 to $299, with a two year subscription for accessing the channels. Service Users who want to continue to receive the channels from Defendants after the initial subscription period must purchase a two year account renewal from Alghafir, TCT, or Jiemao for $120.

37. Defendants have actual knowledge that the transmission of the Protected Channels on the Super Arab Service infringes DISH's copyrights. DISH and Networks sent at least 34 notices of infringement between May 10, 2017 and the filing of this Complaint, demanding that Defendants cease transmitting the Protected Channels identified in the notices, or otherwise cease distributing, selling, and promoting the Super Arab Service in the United States.

38. DISH and Networks sent at least 27 additional notices to CDNs associated with the Super Arab Service from October 5, 2017 to the filing of this Complaint, requesting the removal of

10

the Protected Channels. Upon information and belief, at least some of these notices were forwarded to Street Cat. Even when these CDNs removed the unauthorized content based on Street Cat's copyright infringement, Street Cat intentionally interfered with the takedown efforts by, for example, transmitting the Protected Channels from different CDNs or locations.

39. DISH sent numerous notices of infringement to Amazon and at least 4 notices of infringement to Wal-Mart requesting the removal of listings on their websites offering to sell the Super Arab Service from July 18, 2017 to the filing of this Complaint. Upon information and belief, at least some of these notices were forwarded to Alghafir and TCT.

## CLAIMS FOR RELIEF

### Count I

### Direct Copyright Infringement Under 17 U.S.C. § 501

### Against Street Cat

40. DISH repeats and realleges the allegations in paragraphs 1-39.

41. DISH is a copyright owner under 17 U.S.C. § 106 because DISH holds the exclusive rights to distribute and publicly perform in the United States, by means including satellite, OTT, IPTV, and Internet, the programs that make up the Protected Channels.

42. The programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. DISH's copyrights in programs that aired on the Protected Channels arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including the United Arab Emirates, Qatar, Egypt, and Lebanon where the programs were authored and first published. Under 17 U.S.C. §§ 101, 411, the programs that make up the Protected Channels are non-United

States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.

43. Street Cat directly infringes DISH's copyrights in violation of 17 U.S.C. § 501 by distributing and publicly performing programs that make up the Protected Channels to Service Users, including the works identified in Exhibits 1-2. The copyrighted programs were transmitted from computer servers controlled by Street Cat to Service Users who accessed the programs using the Super Arab Service.

44. DISH has not authorized Street Cat to distribute or publicly perform the programs that make up the Protected Channels in any manner.

45. The infringement of DISH's rights in each program constitutes a separate and distinct act of copyright infringement.

46. Street Cat's actions are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

47. Unless enjoined by the Court, Street Cat will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## Count II

**Inducing and Materially Contributing to Copyright Infringement Under 17 U.S.C. § 501**

**Against Alghafir, TCT, and Jiemao**

48. DISH repeats and realleges the allegations in paragraphs 1-39 and 41-42.

49. DISH's exclusive rights to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels are directly infringed by the unauthorized

transmission of these programs to Service Users who access the programs using Defendants' Super Arab Service.

50. Alghafir, TCT, and Jiemao materially contribute to this infringement of DISH's exclusive distribution and public performance rights by, among other things, providing Service Users access to the Protected Channels and the programs that make up the Protected Channels, despite having the ability to prevent such access. Alghafir, TCT, and Jiemao also induce the infringement of DISH's exclusive distribution and public performance rights by, among other things, creating or expanding the audience for that infringement in the United States.

51. Alghafir, TCT, and Jiemao sell the Super Arab Service in the United States providing Service Users access to unauthorized streams of the Protected Channels and the programs that make up the Protected Channels.

52. Alghafir, TCT, and Jiemao advertise the Super Arab Service as a means of accessing the Protected Channels. Alghafir, TCT, and Jiemao promote the Super Arab Service as having "All Arabic Channels," "1500 Channels," "the best channels," and "latest news and popular programs," including the Protected Channels.

53. Alghafir, TCT, and Jiemao provide material assistance to those directly infringing DISH's exclusive rights by providing the Super Arab Service for the Protected Channels to be viewed. The Protected Channels are presented to Service Users through the Super Arab Service.

54. Alghafir, TCT, and Jiemao intend that the Super Arab Service be used to access the Protected Channels and the programs that make up the Protected Channels, and they promote, encourage, and facilitate using the Super Arab Service in this manner.

55. Alghafir, TCT, and Jiemao have actual knowledge that the transmission of the Protected Channels and the programs that make up the Protected Channels to Service Users infringes DISH's exclusive distribution and public performance rights.

56. Alghafir, TCT, and Jiemao can take simple measures to prevent further infringement of DISH's exclusive rights to distribute and publicly perform the programs that make up the Protected Channels, such as removing the Protected Channels from the Super Arab Service, blocking the Super Arab Service from accessing servers and URLs that are identified to be streaming the Protected Channels, ceasing to buy further devices and services until the Protected Channels are removed from the Super Arab Service, and ceasing to sell the Super Arab Service in the United States.

57. Alghafir, TCT, and Jiemao's actions are willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH.

58. Unless enjoined by the Court, Alghafir, TCT, and Jiemao will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, DISH prays for judgment against Defendants as follows:

A. For a grant of permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Defendants, and any of their agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order (including, without limitation, distributors and retailers of the Super Arab Service), from:

1. transmitting, streaming, distributing, or publicly performing in the United States, with any Super Arab IPTV set-top box, account renewal, or any other device, application,

service, or process, any of the Protected Channels or any of the programming that comprises any of the Protected Channels;

      2.    distributing, selling, providing, or promoting any product or service in the United States, including any Super Arab IPTV set-top box or account renewal, that comprises the whole or part of a network or service for the distribution or public performance of any of the Protected Channels or any of the programming that comprises any of the Protected Channels;

      3.    advertising, displaying, or marketing any Super Arab IPTV set-top box, account renewal, or other service in connection with the Protected Channels or the programming that comprises the Protected Channels; and

      4.    inducing or contributing to another's conduct that falls within 1, 2, or 3 above.

    B.    For twenty-one or more registered works, statutory damages as awarded by the Court up to $150,000 per registered work infringed under 17 U.S.C. § 504(c), or the Defendants' profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b).

    C.    For unregistered works, an award of Defendants' profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b).

    D.    For DISH's attorneys' fees and costs under 17 U.S.C. § 505.

    E.    For impoundment and disposition of all infringing articles under 17 U.S.C. § 503.

    F.    For an order permanently transferring each domain name that Defendants used in connection with the infringement to DISH.

    G.    For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law.

    H.    For such additional relief as the Court deems just and equitable.

Dated:  May 13, 2020

Respectfully submitted,

**HAGAN NOLL & BOYLE LLC**

By: /s/ Stephen M. Ferguson
Stephen M. Ferguson (attorney-in-charge)
Texas Bar No. 24035248
Southern District of Texas Bar No. 614706
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Joseph H. Boyle (of counsel)
Texas Bar No. 24031757
Southern District of Texas Bar No. 30740

**Counsel for Plaintiff DISH Network L.L.C.**