## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | § | Civil Action No. 4:20-cv-01678 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| YAHYA ALGHAFIR, TEXAS COMMUNICATION & TECHNOLOGY LLC, SHENZHEN JIEMAO TECHNOLOGY CO., LTD., and SHENZHEN STREET CAT TECHNOLOGY CO., LTD., individually and together d/b/a Super Arab IPTV, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

### JOINT PRETRIAL ORDER

Plaintiff DISH Network L.L.C. ("DISH") and Defendant Shenzhen Jiemao Technology Co., Ltd. ("Jiemao") submit this joint pretrial order in accordance with the modified scheduling order (Dkt. 44) and Section 4 of the Court's Civil Procedure Manual. None of the Defendants (Jiemao included) have filed answers and only Jiemao has defended. On September 22, 2021, the Court ordered Jiemao to retain licensed counsel. (Dkt. 41 at 6.) On October 5, Samer Al-Azem appeared as counsel for Jiemao. (Dkt. 42.) On January 31, 2022, Mr. Al-Azem moved to withdraw as counsel for Jiemao. (Dkt. 45.) On February 1, the Court denied the motion. (Dkt. 46.) In the event the Court permits counsel to withdraw at a later time, DISH asks that the Court order Jiemao to retain new counsel within 14 days, and if it fails to do so, that its defenses will be struck.

## I.     APPEARANCE OF COUNSEL

*List each party, its counsel, and counsel's address and telephone number in separate paragraphs.*

**Plaintiff, DISH Network L.L.C.**
Hagan Noll & Boyle LLC
Stephen M. Ferguson (attorney-in-charge)
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
(713) 343-0478
Stephen.ferguson@hnbllc.com
Joseph H. Boyle (of counsel)
Joe.boyle@hnbllc.com
David M. Korn (of counsel)
David.korn@hnbllc.com

**Defendant, Shenzhen Jiemao Technology Co., Ltd.**
Samer Al-Azem (attorney-in-charge)
2808 Virginia St.
Houston, Texas 77098
(713) 305-6162
s.alazem@zaemlaw.com

The remaining Defendants Yahya Alghafir, Texas Communication and Technology LLC, and Shenzhen Street Cat Technology Co., Ltd. did not answer or defend, did not participate in drafting the joint pretrial order, and there is no reason to believe they are represented by counsel.

## II.    STATEMENT OF THE CASE

*Give a brief statement of the case, one that the judge could read to the jury panel for an introduction to the facts and parties; include names, dates, and places.*

DISH, one the largest pay-tv providers in the United States, offers more than 400 international channels in 27 different language groups. DISH contracts for and licenses rights for the international channels delivered on its platforms from channel owners and their agents, including Al Jazeera Media Network ("Al Jazeera"); MBC FZ LLC ("MBC"); International Media Distribution (Luxembourg) S.A.R.L. ("IMD"); and World Span Media Consulting, Inc. ("World Span") (collectively, the "Networks").

The Networks' channels include Al Arabiya; Al Hayah 1; Al Jazeera Arabic News; Al Jazeera Mubasher; ART Cima; CBC; CBC Drama; Future TV; Hekayat; LBC; LBCI (a/k/a LDC); MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; and Melody Classic (collectively, the "Protected Channels"). The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and works that air on the Protected Channels in the United States by means including satellite, over-the-top ("OTT"), internet protocol television ("IPTV"), and internet. Twenty-one of the works that aired on the Protected Channels and for which DISH holds or held exclusive distribution and public performance rights are registered with the U.S. Copyright Office ("USCO"). A vast number of additional,

unregistered copyrighted works in which DISH holds or held exclusive distribution and public performance rights also aired on the Protected Channels. DISH's exclusive rights were in effect when these works were unlawfully transmitted by Defendants and are currently in effect, except that as of September 23, 2020 DISH's rights in MBC1, MBC Drama, MBC Kids (a/k/a MBC3), and MBC Masr became non-exclusive, and as of July 31, 2020 DISH no longer owned rights for or distributed Al Jazeera Arabic News and Al Jazeera Mubasher.

Defendants Yahya Alghafir ("Alghafir"), Texas Communication & Technology LLC ("TCT LLC"), Shenzhen Street Cat Technology Co., Ltd. ("Street Cat"), and Jiemao were not authorized by DISH to transmit the Protected Channels or works that air on those channels in the United States, or to provide access to unauthorized transmissions of the Protected Channels in any way.

DISH claims Defendants infringed DISH's copyrights in programs that air on the Protected Channels by transmitting over the internet by means of OTT delivery – without authorization – these works on the Super Arab IPTV service ("Super Arab Service") to users of Super Arab set-top boxes ("Super Arab STBs") in the United States ("Service Users") and by providing access to these unauthorized transmissions of the Protected Channels, thereby causing additional infringements.

Street Cat captured live broadcast signals of the Protected Channels, transcoded those signals into a format useful for streaming over the internet,

4

transferred the transcoded content to one or more servers provided, controlled, and maintained by Street Cat, and then transmitted the Protected Channels to Service Users.

Any member of the public with internet access, including Service Users, were able to receive the Protected Channels by simply purchasing a Super Arab STB, connecting the set-top box to a TV, powering on the device, and selecting the Protected Channels.

Street Cat sold Super Arab STBs containing the Super Arab Service to Jiemao, which in turn sold them to Alghafir and TCT. Jiemao, Alghafir, and TCT distributed, sold, and promoted the Super Arab STBs and the Super Arab Service to Service Users, including through their websites and third-parties such as Amazon and Wal-Mart.

DISH claims Defendants were actually aware that the transmission of the Protected Channels on the Super Arab Service infringed DISH's copyrights. DISH sent numerous written notices of infringement to Defendants between May 10, 2017 and the filing of the complaint on May 13, 2020, demanding that Defendants cease transmitting the Protected Channels identified in the notices, or otherwise stop distributing and selling Super Arab STBs and the Super Arab Service in the United States. But the Protected Channels were not removed from the Super Arab Service. DISH claims Jiemao, Alghafir, and TCT continued to sell Super Arab STBs and

5

promote the Super Arab Service as a means for Service Users to access the Protected Channels in the United States after receiving DISH's infringement notices. Jiemao maintains it stopped selling Super Arab STBs no later than May 11, 2017, when it told DISH that it stopped.

## III.   JURISDICTION

*Briefly specify the jurisdiction of the subject matter and the parties. If there is an unresolved jurisdictional question, state it.*

This is a copyright infringement case under the Copyright Act, 17 U.S.C. § 101 *et seq.* The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1400. The Court previously found Jiemao is subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(1) based on its minimum contacts with Texas. (Dkt. 29 at 6.) Additionally, Street Cat is subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(1)(A) and 4(k)(2) because it sold Super Arab STBs to Jiemao with knowledge they would be sold in Texas and the United States, and Alghafir and TCT are subject to personal jurisdiction under 4(k)(1)(A) because they reside in and sold Super Arab STBs in Texas.

## IV.   MOTIONS

*List pending motions.*

None.

## V.   CONTENTIONS OF THE PARTIES

*State concisely in separate paragraphs each party's claims.*

### **Plaintiff's Claims**

DISH owns or owned the exclusive right to distribute and publicly perform in the United States works aired on the Protected Channels, pursuant to signed, written agreements with the Networks. The written agreements are sufficient to transfer the specified exclusive rights to DISH. *See* 17 U.S.C. §§ 201(d), 204(a).

At least twenty-one of these copyrighted works were registered with the USCO ("Registered Works"). Fourteen of these works were registered within three months of the work's first publication and therefore were timely for purposes of awarding statutory damages. *See* 17 U.S.C. § 412(2). Most of the copyrighted works aired on the Protected Channels are unregistered, non-United States works ("Unregistered Works"), for which DISH's monetary remedy is limited to actual damages and disgorgement of the infringers' profits.

Street Cat caused the Protected Channels to be transmitted to Service Users in the United States without authorization by means of OTT delivery, including the Registered Works and Unregistered Works. As a result, Street Cat directly infringed DISH's exclusive rights to distribute and publicly perform the Registered Works and Unregistered Works. *See* 17 U.S.C. §§ 106(4), 501.

Jiemao, Alghafir, and TCT sold Super Arab STBs with the Super Arab Service in the United States, with the knowledge it was infringing DISH's exclusive rights, as shown by their receipt of numerous notices of infringement demanding that they

cease providing access to the Protected Channels and stop distributing and selling Super Arab STBs and the Super Arab Service. Jiemao, Alghafir, and TCT advertised the Super Arab Service as a means of accessing the Protected Channels. Jiemao, Alghafir, and TCT's actions created or expanded the audience for the infringement of DISH's exclusive rights. As such, Jiemao, Alghafir, and TCT induced and materially contributed to Street Cat's direct infringement of DISH's exclusive distribution and public performance rights in the Registered Works and Unregistered Works, despite having the ability to prevent such access. *See Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170–72 (9th Cir. 2007).

Based on the forgoing, the Court should find Street Cat liable for direct copyright infringement and Jiemao, Alghafir, and TCT liable for secondary infringement by inducement and material contribution. The Court should enjoin Defendants' conduct; award DISH statutory damages for each Registered Work; award DISH Defendants' profits for infringing the Unregistered Works and Registered Works not registered within three months of the work's first publication; and award DISH its attorneys' fees and costs. 17 U.S.C. §§ 502, 504–505.

### Jiemao's Claims

Jiemao claims at all times relevant hereto, Jiemao could not control the actions of any of the other Defendants in this matter and did not knowingly infringe any of

DISH's exclusive rights nor did it induce, materially or otherwise, Street Cat's infringement of any rights that DISH had in any claimed copyrighted works. Jiemao simply purchased products from Street Cat and was not aware that it could have picked or chosen what channels could have been removed on any service or block any specific URLs.

## VI.   ADMISSIONS OF FACT

*List all facts that require no proof.*

<u>Background & Jurisdiction</u>

1.      This lawsuit was filed on May 13, 2020.

2.      Alghafir and TCT were served with summons, the complaint, and the Order for Conference (Dkt. 5) on June 10, 2020.

3.      Street Cat and Jiemao were served pursuant to the Court's order for alternative service (Dkt. 20) with summons and the complaint by email on October 21, 2020, at *szstreetcat@foxmail.com* and *superarabiptv@hotmail.com*, respectively.

4.      None of the Defendants (Jiemao included) have filed an answer.

5.      On February 22, 2021, DISH's counsel served Plaintiff's First Set of Requests for Admission ("RFAs") to Jiemao by mail and email. Jiemao has not responded to the RFAs or moved to withdraw the deemed admissions.

<u>Parties</u>

6.     DISH is a limited liability company organized in Colorado with its headquarters in Englewood, Colorado.

7.     DISH is one of largest pay-tv providers in the United States, providing copyrighted programming to millions of subscribers nationwide.

8.     DISH is one of largest providers of international television channels in the United States, offering more than 400 channels in 27 different languages.

9.     Alghafir is an individual residing in Houston, Texas.

10.     TCT was a limited liability company organized in Texas with its principal place of business located in Houston, Texas. TCT is currently in "forfeited" status according to the Texas Secretary of State.

11.     Alghafir distributed, sold, advertised and promoted Super Arab STBs and the Super Arab Service through TCT and other aliases and business names including Yahya Luna, Mike Luna, Super IPTV, TCT LLC, Top Creative Trade, Texas Closeout Trade, and True Call.

12.     Alghafir is the president, director, founder, and owner of TCT. Alghafir authorized, controlled, participated in, and received direct financial benefit from the infringing activities of TCT.

13.     Jiemao is a corporation organized in China with registration number 91440300MA5DMEE486, with its principal place of business located in Shenzhen City, Guangdong Province, China.

<u>DISH's Copyrights</u>

14.     DISH contracts for and licenses rights for the international channels distributed on its platform from channel owners and their agents, including Al Jazeera; MBC; IMD; and World Span.

15.     The Networks' channels include Al Arabiya; Al Hayah 1; Al Jazeera Arabic News; Al Jazeera Mubasher; ART Cima; CBC; CBC Drama; Future TV; Hekayat; LBC; LBCI (a/k/a LDC); MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; and Melody Classic.

16.     The Protected Channels include some of the most popular Arabic channels, which are must-have channels to sell an Arabic IPTV box or service. DISH does not sublicense the Protected Channels or works that aired on the channels to other providers, and instead benefits from maintaining exclusivity.

17.     MBC is a media and broadcasting organization headquartered in the United Arab Emirates ("UAE") that provides the Protected Channels MBC1, MBC Drama, MBC Kids/MBC3, MBC Masr, and Al Arabiya ("MBC Channels").

18.     Al Jazeera is a media and broadcasting organization headquartered in Qatar that provides the Protected Channels Al Jazeera Arabic News and Al Jazeera Mubasher ("Al Jazeera Channels").

19.     IMD is a redistributor of content that entered into signed, written agreements with various channel owners and producers ("IMD Producers") granting IMD the exclusive right to distribute and publicly perform in the U.S., by any means of transmission, all programming aired on the Al Hayah 1, ART Cima, Future TV, Hekayat, LBC, and LBCI/LDC channels ("IMD Channels"). IMD's exclusive rights in the IMD Channels are currently in effect.

20.     The IMD Producers were headquartered in their respective home countries of Lebanon and Egypt when the IMD Unregistered Works were first published.

21.     World Span is a redistributor of content that entered into signed, written agreements with various channels owners and producers ("World Span Producers") granting World Span the exclusive right to distribute and publicly perform in the United States, by any means of transmission, all programming aired on the CBC, CBC Drama, and Melody Classic channels ("World Span Channels"). World Span's exclusive rights in the World Span Channels are currently in effect.

22.     The World Span Producers were headquartered in their home country of Egypt.

23.     The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment. The works consist of copyrightable audiovisual works, such as dramatic and informational TV shows.

24.     DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and works that air on the Protected Channels in the United States by means including satellite, OTT, IPTV, and internet.

25.     DISH's exclusive rights in the Protected Channels were in effect from at least May 14, 2017 and are currently in effect, except for the Al Jazeera Channels, which exclusive rights expired as of July 31, 2020, and MBC1, MBC Drama, MBC Kids/MBC3, MBC Masr, which exclusive rights expired September 23, 2020.

26.     Twenty-one of the works that aired on the Protected Channels and for which DISH holds exclusive distribution and public performance rights are registered with the USCO ("Registered works"). (*See* Dkt. 1, Ex. 1.)

27.     Fourteen of the Registered Works were registered within three months of the work's first publication.

28.     MBC registered twelve separate works with the USCO within three months of the work's first publication. These works include episodes of television series produced by MBC that aired on MBC1, MBC Drama, MBC 3, and MBC Masr

13

channels in December 2017, September 2018, and March 2019 ("MBC Registered Works").

29.   Al Jazeera registered two separate works with the USCO within three months of the work's first publication in December 2017. These works include episodes of television series produced by Al Jazeera that aired on Al Jazeera Arabic News and Al Jazeera Mubasher. ("Al Jazeera Registered Works").

30.   A vast number of additional, unregistered copyrighted works in which DISH holds exclusive distribution and public performance rights also aired on the Protected Channels ("Unregistered Works"). (*See* Ex. Dkt. 1, Ex. 2.)

31.   MBC produced works that aired on the MBC1, MBC Drama, MBC3, MBC Masr, and Al Arabiya channels but were not registered with the USCO ("MBC Unregistered Works").

32.   Al Jazeera produced works that aired on the Al Jazeera Arabic News and Al Jazeera Mubasher channels but were not registered with the USCO ("Al Jazeera Unregistered Works").

33.   The IMD Producers each produced works in their respective home countries of Lebanon and Egypt that aired on each of the IMD Channels but were not registered with the USCO ("IMD Unregistered Works").

34.     The World Span Producers each produced works in their home country of Egypt that aired on each of their World Span Channels but were not registered with the USCO ("World Span Unregistered Works").

35.     The Registered Works and Unregistered Works were produced outside the United States in countries including the UAE, Qatar, Egypt, and Lebanon, which are parties to copyright treaties with the United States, including the Berne Convention for the Protection of Literary and Artistic Works.

36.     The Registered Works were published at the time and locations listed in their Certificates of Registration.

37.     The first time copies of the Unregistered Works were distributed to a group of persons or offered to be distributed to a group of persons for purposes of further distribution and public performance was when the works were inserted into their respective channel feed that originated from outside the United States in countries including the UAE, Qatar, Egypt, and Lebanon.

38.     The IMD Unregistered Works were first published in Lebanon and Egypt when inserted in the IMD Producers' respective channel feeds that originated from these foreign countries, and were later delivered to uplink facilities around the world for subsequent distribution to viewers.

39.     The World Span Unregistered Works were first published in Egypt when inserted into the World Span Producers' respective channel feeds that originated from

Egypt, and were later delivered to uplink facilities around the world for subsequent distribution to viewers.

40.    DISH was granted the exclusive license and right to publicly perform in the United States, by means including IPTV, OTT, and internet, the MBC Registered Works and MBC Unregistered Works, Al Jazeera Registered Works and Al Jazeera Unregistered Works, IMD Unregistered Works, and World Span Unregistered Works.

41.    Defendants were not authorized to transmit, distribute, or publicly perform in the United States the Protected Channels or works that air on those channels, or to provide access to unauthorized transmissions of the Protected Channels and works that air on those channels, and DISH has received no compensation from Defendants to do so.

Direct Infringement

42.    Any member of the public with internet access, including Service Users, can receive the Protected Channels from Defendants by simply purchasing a Super Arab STB, connecting it to a TV, powering on the device, and selecting the Protected Channels.

43.    The Protected Channels were transmitted on the Super Arab Service from at least May 10, 2017 to February 22, 2021.

44.     The MBC Registered Works and MBC Unregistered Works, Al Jazeera Registered Works and Al Jazeera Unregistered Works, IMD Unregistered Works, and World Span Unregistered Works were transmitted on the Super Arab Service, which were then accessed by Service Users.

45.     Nagrastar LLC ("Nagrastar"), a media security organization, monitored the channels transmitted to Service Users, including the Protected Channels. Nagra recorded incoming and outgoing traffic on its network generated by NagraStar's Super Arab STB and Super Arab Service subscription in the form of PCAP files and captured screenshots of the Protected Channels being transmitted on the Super Arab Service, showing that the Protected Channels generally were transmitted 24 hours per day, 7 days per week.

46.     NagraStar prepared monitoring reports in which it recorded the instances of transmission of the Protected Channels on the Super Arab Service. Between May 8, 2017 and the filing of the complaint, NagraStar identified at least 1,043 separate instances of Protected Channels being transmitted on the Super Arab Service.

47.     Jiemao responded to a written notice of infringement on July 13, 2017, stating, "[w]e are only reselling the IPTV devices. [T]he contact information for the original selling company is: Shenzhen Street Cat CO; LTD. email: szstreetcat@foxmail.com."

<u>Secondary Infringement</u>

48.     In approximately April 2017, DISH's investigators purchased a Super Arab STB from Alghafir through Amazon.com.

49.     In January 2020, DISH's investigator purchased a Super Arab STB from Alghafir and TCT through Amazon.com for $299.00 that was described as "SUPER ARAB IPTV with More Than 1500 Channels and Movies, Including 2 Years Service and Additional Keyboard." DISH's investigator received the Super Arab STB with a return address of Top Creative Trade and TCT's principal place of business.

50.     Jiemao, Alghafir, and TCT distributed, sold, and promoted Super Arab STBs and the Super Arab Service to Service Users through websites which have included www.superarabiptv.com ("Superarabiptv.com"), www.iptvarab.com ("Iptvarab.com"), and www.superarabiptv.net ("Superarabiptv.net") (collectively, the "Super Arab Websites").

51.     Jiemao, Alghafir, and TCT advertised Super Arab STBs and the Super Arab Service as a means for Service Users to view the Protected Channels.

52.     The Super Arab Websites permitted consumers to add Super Arab STBs to a shopping cart, where Jiemao, Alghafir, and TCT sold the STBs with a two year subscription for accessing the channels available on the Super Arab Service including the Protected Channels. Service Users who wanted to continue to receive the channels

from Defendants after the initial subscription period needed to purchase a two year account renewal from Alghafir, TCT, or Jiemao for approximately $120.

53.     Alghafir and TCT were listed as the registrant of the Superarabiptv.com and Iptvarab.com domains using Alghafir's name and alias Yahya Luna, TCT's principal place of business, and email address yahya@truecall.com. True Call was also identified as the business name for the Iptvarab.com domain.

54.     Alghafir, TCT, and Jiemao promoted Super Arab STBs and the Super Arab Service on Superarabiptv.com, instructing consumers that the service has "All Arabic Channels," including "1500 Channels & Movies with 2 years complimentary service," "No Monthly Fees," the "Best after-sales service," is "Plug & Play," and there is "no need to install Dish."

55.     Alghafir, TCT, and Jiemao promoted Super Arab STBs and the Super Arab Service on Iptvarab.com, instructing consumers "[w]e offer the best channels [w]e strive to provide the best quality content [m]ore than 650 Arabic channels," and the Super Arab Service allows consumers to "[e]njoy a full range of Arabic TV programs while broadcasting with the latest news, popular programs, sports, and more."

56.     Alghafir, TCT, and Jiemao promoted Super Arab STBs and the Super Arab Service on Superarabiptv.net, instructing consumers "[w]e offer the best channels [w]e strive to provide the best quality content [m]ore than 500 Arab

channels," and the Super Arab Service allows consumers to "[e]njoy a full range of Arabic TV programs while broadcasting with the latest news, popular programs, sports, and more."

57.     Alghafir and TCT distributed, sold, and promoted Super Arab STBs and the Super Arab Service through Amazon.com, Walmart.com, and other distributors and resellers throughout the United States.

58.     Jiemao, Alghafir, and TCT assisted Service Users to access the Protected Channels; failed to develop any filtering tools to remove the Protected Channels; and a commercially significant, high-volume of Service Users used the Super Arab Service to view unauthorized transmissions of Arabic television channels, including the Protected Channels.

<u>Knowledge & Willfulness</u>

59.     On May 3, 2020, Alghafir and TCT responded to a notice of infringement claiming, "I was not aware until your cease and desist letter was brought to my attention that Super Arab IPTV box is violating your clients' copyright," and acknowledged their prior "selling, dealing and participating in [ ] activity related to the Super Arab IPTV boxes."

60.     DISH sent numerous notices of infringement to Amazon and at least four notices of infringement to Wal-Mart requesting the removal of online listings

for the Super Arab STBs and Super Arab Service from July 18, 2017 to the filing of the complaint. At least some of these notices were forwarded to Alghafir and TCT.

61.     DISH and the Networks sent numerous written notices of infringement to Jiemao. Jiemao responded on May 11, 2017 stating, "[w]e are only rebranding and reselling the IPTV devices," "we disabled the website www.iptvarab.com," "we informed our customers in USA," and "[r]eseller in USA should run out of devices within 2-3 weeks from now, that should stop all sales activity for Super Arab IPTV in USA marketplace." However, Jiemao, Alghafir, and TCT continued to sell Super Arab STBs with the Super Arab Service in the United States after May 11, 2017.

<u>Damages</u>

62.     DISH loses revenue as a result of the transmission of the Protected Channels on the Super Arab Service.

63.     The number of Service Users that purchased Super Arab STBs to access the Protected Channels through the Super Arab Service, and would have otherwise selected or stayed with DISH, is not easily determined.

64.     DISH has an established reputation as a leading provider of television channels in the United States, including international channels. DISH transmits the Protected Channels through state-of-the-art OTT and satellite platforms.

65.     The transmission of the Protected Channels on the Super Arab Service takes place beyond DISH's control and quality assurance, thereby harming DISH in

the eyes of consumers that incorrectly assume this level of performance is standard among internet-based platforms such as DISH's Sling International service. This reputational harm is difficult to quantify.

66.     Defendants sold approximately 7,650 Super Arab STBs per year in the United States. Based on a minimum retail price of $199, which is a conservative estimate because the STBs were marketed from $199 to $299, Defendants' profits from the retail sale of Super Arab STBs exceeded $4 million.

67.     Defendants provided no evidence of deductible expenses from their sale of Super Arab STBs and Super Arab Service.

## VII.  CONTESTED ISSUES OF FACT

*List all material facts in controversy.*

<u>Background & Jurisdiction</u>

1.     Street Cat manufactured, distributed, and sold Super Arab STBs and service plans to Jiemao, with knowledge that Jiemao in turn distributed them to Alghafir and TCT in the United States.

2.     Alghafir and TCT were Jiemao and Street Cat's United States-based distributors of Super Arab STBs and the Super Arab Service.

<u>Parties</u>

3.      Street Cat is a corporation organized in China with registration number 91440300MA5D97DM9M, with its principal place of business located in Shenzhen City, Guangdong Province, China.

<u>Direct Infringement</u>

4.      Street Cat manufactured Super Arab STBs and owned and operated the Super Arab Service. Street Cat through the Super Arab Service caused the Protected Channels to be transmitted over the internet to Service Users soon after the original authorized transmission.

5.      Street Cat captured live broadcast signals of the Protected Channels (including the Registered Works and Unregistered Works) transcoded these signals into a format useful for streaming over the internet, transferred the transcoded content to one or more servers provided, controlled, and maintained by Street Cat, and then transmitted the Protected Channels (including the Registered Works and Unregistered Works) to Service Users through OTT delivery.

6.      DISH and the Networks sent numerous written notices of infringement to Street Cat. Street Cat repeatedly responded to the notices of infringement seeking a "business deal" with DISH and stating one "[s]olution is that we stop activating and assembling the Super Arab IPTV boxes so all sales for the box will stop in the USA marketplace." Street Cat's responses were dated September 15, 2017; September 26,

2017; October 11, 2017; October 23, 2017; November 14, 2017; December 18, 2017; January 15, 2018; February 7, 2018; April 30, 2018; May 22, 2018; and May 2, 2020.

7.     On May 22, 2018, Street Cat responded to a notice of infringement acknowledging that "[t]he documents [DISH's counsel] sent show that Dish has the right to distribute the channels in the USA," but Street Cat refused to cease its infringement because Street Cat claimed, it "[i]s not registered in the USA" and has "[n]either any server nor broadcasting equipment in the USA." Street Cat also opined that "I do not think that such quantity [of Super Arab STBs sold in the United States] will effect [sic] a big company like Dish Network."

8.     On May 2, 2020, Street Cat again responded to a notice of infringement acknowledging DISH's rights to distribute the Protected Channels in the United States, but claimed they "[a]re not subject to the jurisdiction of US copyright law," and again sought a "business deal" with DISH.

<u>Secondary Infringement</u>

9.     Jiemao purchased and received Super Arab STBs with the Super Arab Service from Street Cat, which it distributed and sold to distributors and resellers in the U.S., including Alghafir and TCT, at various times including December 2017, September 2018, and March 2019.

10.     Jiemao, Alghafir, and TCT had the ability to prevent further infringement of DISH's exclusive rights in the Protected Channels, including

24

removing the Protected Channels from the Super Arab Service, blocking certain URLs for the Protected Channels, cease buying Super Arab STBs and Super Arab Service and selling it in the United States – but failed to implement any of these measures.

<u>Knowledge and Willfulness</u>

11.   Defendants had actual knowledge that the transmission of the Protected Channels on the Super Arab Service infringed DISH's copyrights since at least May 2017. DISH and Networks sent at least 34 notices of infringement between May 10, 2017 and the filing of the complaint, demanding that Defendants cease transmitting the Protected Channels identified in the notices, or otherwise cease distributing, selling, and promoting Super Arab STBs and Super Arab Service in the United States.

12.   DISH and Networks sent at least 27 additional notices to CDNs associated with the Super Arab Service from October 5, 2017 to the filing of the complaint, requesting the removal of the Protected Channels. At least some of these notices were forwarded to Street Cat. Even when these CDNs removed the unauthorized content based on Street Cat's copyright infringement, Street Cat intentionally interfered with the takedown efforts by, for example, transmitting the Protected Channels from different CDNs or locations.

13.   Street Cat continued to transmit channels exclusively licensed to DISH and all Defendants continued to distribute and sell Super Arab STBs with the Super

Arab Service in the United States, despite receiving multiple demands from DISH that they cease.

14.     DISH and the Networks sent numerous written notices of infringement to Alghafir and TCT. On August 29, 2017, Alghafir responded denying his infringement stating, "I do not sell any service for any of the channels you have listed." On August 30, 2017, Alghafir responded demanding that DISH and the Networks remove TCT and his email address from future notices of infringement.

15.     Jiemao sold tens of thousands of Super Arab STBs and service plans in the U.S. after May 10, 2017.

## VIII. AGREED PROPOSITIONS OF LAW

*List the legal propositions that are not in dispute.*

<u>Jurisdiction</u>

16.     Federal courts have subject matter jurisdiction over copyright infringement cases. 28 U.S.C. §§ 1331, 1338, 1400.

17.     A defendant is subject to specific personal jurisdiction when it delivers products into the stream of commerce and there is "mere foreseeability or awareness" that "[t]he defendant's product made its way into the forum…." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006).

18.     An individual defendant is subject to general personal jurisdiction in the state of their domicile while a corporate defendant is subject to general personal

jurisdiction where their principal place of business is located. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924–25 (2011).

### Defendants' Admissions

19.     A defendant by their default admits the plaintiff's well-pleaded allegations in the complaint and is barred from contesting the facts thus established. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

20.     An allegation in a complaint – other than one relating to amount of damages – is deemed admitted if a responsive pleading is required and the allegation is not denied. Fed. R. Civ. P. 8(b)(6); *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. H-12-2293, 2014 WL 11510263, at *1 (S.D. Tex. May 12, 2014) (Hittner, J.).

21.     Under Rule 36(a), litigants may request admissions on a broad range of maters, including ultimate facts, as well as the application of law to facts. *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001).

22.     Unless the party to whom the requests for admission are directed answers or objects within 30 days, all matters in the requests are deemed admitted. *Hulsey v. Tex.*, 929 F.2d 168, 171 (5th Cir. 1991).

23.     "An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible."

*Amer. Auto. Ins. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Cooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).

24.    Judgment may be granted on deemed admissions alone against a *pro se* party. *Grenet v. State Farm Lloyds*, No. H-08-643, 2009 WL 10713308, at *4 (S.D. Tex. Jan. 21, 2009) (Hittner, J.).

<u>Copyright Ownership & Standing</u>

25.    A published work is protected under the Copyright Act provided: "(1) on the date of first publication, one or more of the authors…is a national, domiciliary, or sovereign authority of a treaty party…; or (2) the work is first published…in a foreign nation that, on the date of first publication, is a treaty party." 17 U.S.C. § 104(b).

26.    An exclusive licensee is a copyright owner with standing to sue under the Copyright Act. 17 U.S.C. §§ 101, 501(b); *Ramirez v. Nichols*, 496 F. App'x 383, 385 (5th Cir. 2012); *Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007).

27.    A copyright owner may sue for infringement of a registered work, and for infringement of a non-United States work, whether registered or unregistered. 17 U.S.C. § 411(a).

28.    A work first published in a foreign, treaty party country is not a United States work. 17 U.S.C. § 101.

28

29.     A certificate of registration issued within 5 years of first publication of the work is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).

30.     The ownership of copyrights in the unregistered works is determined by the laws in the work's country of origin. *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 89 (2d Cir. 1998).

31.     Determinations of foreign law are treated as questions of law, and in answering those questions "the court may consider any relevant material or source." Fed. R. Civ. P. 44.1; *Henry v. S/S/ Bermuda Star*, 863 F.2d 1225, 1228 n.9 (5th Cir. 1989).

32.     The laws of UAE, Qatar, Lebanon, and Egypt provide that:

a.  Copyrights subsist in an audiovisual work. UAE Art. 2; Qatar Art. 1, 2(6); Lebanon Art. 1–2, Egypt Art. 140(7).

b.   Copyrights originally vest in the author of the work, generally defined as the creator or producer of the work. UAE Art. 1–2, Qatar Art. 1, 7; Lebanon Art. 9; Egypt Art. 183(3).

c.  Copyright owners have the exclusive right to control copying of their works, which generally includes the transmission,

distribution, or public performance of their works. UAE Art. 7; Qatar Art. 7(4), (6)–(7); Lebanon Art. 15; Egypt Art. 147.

d. Broadcasting organizations have the exclusive right to carry out and prevent the re-broadcasting and communication of their broadcasts and programs to the public. *See* UAE Art. 19; Qatar Art. 42; Lebanon Art. 42; Egypt Art. 158.

33. A copyright may be transferred by signed, written agreement. 17 U.S.C. §§ 201(d), 204(a).

34. For purposes of the statute of limitations, a claim for copyright infringement accrues on the actual or constructive discovery of the relevant infringement. *Stross v. Hearst Commc'ns, Inc.*, No. SA-18-CV-01039-JKP, 2020 WL 5250579, at *7 (W.D. Tex. Sept. 3, 2020) (citing *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 393 (5th Cir. 2014)).

<u>Direct Copyright Infringement</u>

35. A claim for direct copyright infringement has two elements: (1) plaintiff's copyright ownership and (2) defendant's violation of at least one of plaintiff's exclusive rights. *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).

36. One of the exclusive rights of a copyright owner is the right to perform an audiovisual work publicly. 17 U.S.C. § 106.

37.     To perform a work publicly means to transmit a performance of the work to the public. 17 U.S.C. § 101.

38.     A defendant performs an audiovisual work publicly when they provide a service that allows subscribers to watch television programs over the internet. *Am. Broad. Cos. v. Aereo*, 573 U.S. 431, 442 (2014).

Secondary Copyright Infringement

39.     The Supreme Court has identified two categories of secondary, contributory infringement – material contribution and inducement. *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

40.     Infringement by material contribution has two elements: the defendant: (1) "[h]as actual knowledge that specific infringing material is available using its system" and (2) "[c]an take simple measures to prevent further damage to copyrighted works…." *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 752 (W.D. Tex. 2019).

41.     Infringement by inducement has four elements: (1) the distribution of a product or service, (2) acts of infringement, (3) the object of promoting its use to infringe copyright, and (4) causation. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (citing *Grokster*, 545 U.S at 936–37).

42.     The defendant's object of promoting a service to infringe copyrights can be shown in a number ways, such as through (1) advertising the product or service as

a tool for infringement, (2) responding affirmatively to requests for help in locating copyrighted material, (3) explicit internal communications promoting infringing use, (4) the failure to develop filtering tools, and (5) a commercially significant, high-volume infringing use of the defendant's product or service. *Fung*, 710 F.3d at 1034.

43.    For an inducement claim, "causation" means to broaden the audience and the scope of the infringement. *Universal City Studios Prods. LLLP v. Tickbox TV LLC*, No. CV 17-7496-MWF (ASx), 2018 WL 1568698, at *12 (C.D. Cal. Jan. 30, 2018).

<u>Willfulness</u>

44.    Infringement is willful if the defendant "knows his actions constitute an infringement." *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1998).

45.    "Willfulness may be inferred if notice of a valid copyright was given prior to infringement." *Malaco Inc. v. Cooper*, No. 300CV2648P, 2002 WL 1461927, at *4 (N.D. Tex. July 3, 2002) (citing *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991)).

<u>Damages & Other Remedies</u>

46.    The Copyright Act allows for recovery of the copyright owner's actual damages plus any additional profits of the infringer, or statutory damages. 17 U.S.C. § 504(a).

32

47.     Statutory damages may be awarded for infringement of registered works commenced after first publication but prior to registration, so long as registration is made within three months of publication. 17 U.S.C. § 412(2).

48.     Statutory damages up to $150,000 per work may be awarded for willful infringement. 17 U.S.C. § 504(c).

49.     Courts may consider the following factors in determining whether to award maximum statutory damages: "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Tapestry, Inc. v. Trendy Tex., LLC*, No. H-16-3150, 2018 WL 1558274, at *1 (S.D. Tex. Jan. 19, 2018).

50.     The Copyright Act authorizes the Court to "grant…final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

51.     A permanent injunction is appropriate where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## IX.    CONTESTED PROPOSITIONS OF LAW

*State briefly the unresolved questions of law, with authorities to support each.*

None.

## X.    EXHIBITS

1.    On a form similar to the one provided by the clerk, each party will attach two lists of all exhibits expected to be offered and will make the exhibits available for examination by opposing counsel. All documentary exhibits must be exchanged before trial, except for rebuttal exhibits or those whose use cannot be anticipated.

2.    A party requiring authentication of an exhibit must notify the offering counsel in writing within 7 days after the exhibit is listed and made available; failure to object in advance of the trial in writing concedes authenticity.

3.    Within reason, other objections to admissibility of exhibits must be made at least 7 days before trial; the Court will be notified in writing of disputes, with copies of the disputed exhibit and authority.

3.    Parties must mark their exhibits to include the date and case number on each. At the trial, the first step will be the offer and receipt in evidence of exhibits.

34

## XI.   WITNESSES

*List the names and addresses of witnesses who may be called with a brief statement of the nature of their testimony. Include the qualifications of expert witnesses; these will be used to qualify the expert at trial.*

| Name/Affiliation | Contact Info. | Expert Qualifications and/or Testimony Subject Matter |
|---|---|---|
| Elizabeth Riemersma<br><br>DISH Network L.L.C. | Contact through Plaintiff's counsel | Plaintiff's corporate representative testifying about Plaintiff's business and its role in the pay-tv industry in general, the exclusive copyright license agreements, identification of the channels and works claimed, and the harm caused by copyright infringement. |
| Gregory Duval,<br><br>NagraStar LLC | Contact through Plaintiff's counsel | Expert qualifications:<br>• Ph.D. software engineering;<br>•  20+ years in media security with Nagravision, SA and NagraStar LLC; and<br>• 10+ years managing and directing NagraStar's anti-piracy and infringement investigations, and support of legal actions<br><br>Testimony subject matter:<br>Plaintiff's expert witness testifying to NagraStar's investigation and Defendants' transmission of the Protected Channels to users of the Super Arab Service. |

| | | |
|---|---|---|
| Yahya Alghafir<br><br>Defendant | | Defendant testifying individually and on behalf of co-Defendant TCT concerning Defendant Street Cat's operation of the Super Arab Service and transmission of the Protected Channels; Defendants' knowledge of Plaintiff's copyrights; Defendants' distribution and sale of the Super Arab Service; Defendants' advertising and promotion of the Service; measures available to Defendants to reduce infringement, and Defendants' profits. |
| Stephen Ferguson<br><br>Attorney, Hagan Noll & Boyle LLC | | Plaintiff's counsel testifying concerning authentication of communications with Defendants, including service of RFAs to Jiemao. |
| David Korn<br><br>Attorney, Hagan Noll & Boyle LLC | | Plaintiff's counsel testifying concerning authentication of communications with Defendants, including service of RFAs to Jiemao. |
| Ze Wang<br><br>Corporate representative, Defendant Jiemao | | Defendant Jiemao's corporate representative testifying individually and on behalf of Jiemao about Defendant Street Cat's operation of the Super Arab Service and transmission of the Protected Channels; Defendants' knowledge of Plaintiff's copyrights; Defendants' distribution and sale of the Super Arab Service; Defendants' advertising and promotion of the Service; measures available to |

| | | Defendants to reduce infringement, and Defendants' profits. |
| --- | --- | --- |

If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

## XII.  SETTLEMENT

All settlement efforts have been exhausted, the case cannot be settled, and it will have to be tried.

## XIII. TRIAL

The probable length of trial is four (4) days. Logistical problems include the attendance of out-of-state and out-of-country witnesses.

## XIV.  ATTACHMENTS

    1.    DISH's proposed findings of fact and conclusions of law, with authority;

    2.    DISH's pretrial brief; and

    3.    DISH's exhibit list.


Date:_____     _____

                                          David Hittner,
                          United States District Judge

Approved

Date: February 1, 2022 _____        _____ /s/ Stephen M. Ferguson
                                                      Stephen M. Ferguson
                                                      Attorney-in-Charge,
                                              Plaintiff DISH Network L.L.C.

Date: February 1, 2022 _____        _____ /s/ Samer Al-Azem
                                                      Samer Al-Azem
                                                      Attorney-in-Charge,
                              Defendant Shenzhen Jiemao Technology Co., Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2022, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all CM/ECF participants in this case.

                                        /s/ Stephen M. Ferguson
                                        Stephen M. Ferguson